[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 260.]

THE STATE EX REL. GREEN, APPELLANT, *v*. OHIO DEPARTMENT OF MENTAL
RETARDATION AND DEVELOPMENTAL DISABILITIES ET AL., APPELLEES.

[Cite as *State ex rel. Green v. Ohio Dept. of Mental Retardation &
Developmental Disabilities*, 2002-Ohio-6340.]

*Workers' compensation—Claimant's application for loss-of-use award under
R.C. 4123.57(B) denied by Industrial Commission—Commission ordered
to reconsider the claim and issue an amended order, when.*

(No. 2001-1168—Submitted August 27, 2002—Decided December 4, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-872.

_____

**Per Curiam.**

{¶1} Appellant-claimant Brittina M. Green has osteomyelitis of the left
thumb due to an industrial injury. In 1996, she sought a scheduled loss award under
R.C. 4123.57(B), claiming total loss of use of the left thumb. The evidence was in
conflict. Drs. Richard M. Ward and M.C. Shah both found total loss of use,
although Dr. Ward found some active range of motion at the interphalangeal joint.
In contrast, Dr. James H. Rutherford declared that claimant had not lost total use of
her thumb. He assessed a 54 percent impairment of the left thumb.

{¶2} Appellee Industrial Commission of Ohio denied claimant's motion as
follows:

{¶3} "Although there is evidence of a severe loss of active motion, there is
nevertheless evidence that claimant retains some minimal movement in the IP joint
of 10 degrees according to Dr. Ward (while Dr. Rutherford finds more at various
levels).

{¶4} "ORC 4123.57 states that 'For ankylosis (*total stiffness*) of or
contractures (due to scars or injuries) which make * * * the * * * thumb * * *

useless * * *' (emphasis added). Since the prerequisite for such an award is ankylosis, and ORC 4123.57 immediately defines that parenthetically to be TOTAL STIFFNESS; inasmuch as claimant has some minimal active movement, it is found that ankylosis as defined by ORC 4123.57 does not exist, and therefore the denial of claimant's C-86 was appropriate.

{¶5} "While it may be persuasively argued that claimant's degree of loss of active motion or strength results in the effective loss of use of the thumb, the statutory prerequisite for an award for such is that such loss of use be due to ankylosis (or contracture[s]—which are not germane herein), which prerequisite has not been met." (Emphasis sic.)

{¶6} Further appeal was denied.

{¶7} Claimant did not prevail on her petition in mandamus before the Court of Appeals for Franklin County. She now appeals to this court as of right.

{¶8} At issue is the commission's denial of scheduled loss compensation. Upon review, we find the order to possess both legal and evidentiary defects warranting a writ of mandamus ordering the commission to consider further the claim and issue an amended order.

{¶9} From a legal standpoint, we disagree with the commission's theory that nonamputees qualify for a loss-of-use award only if the loss of use is due to ankylosis. This theory derives from the following item in R.C. 4123.57(B)'s schedule of compensation:

{¶10} "For ankylosis (total stiffness of) or contractures (due to scars or injuries) which makes any of the fingers, thumbs, or parts of either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof."

{¶11} Cognizant that scheduled loss awards were originally limited to amputees, the commission has apparently extrapolated from this passage that while the General Assembly desired to extend benefits to nonamputees, its designation of

ankylosis rather than general loss of use reflected an intent to restrict those benefits to those with that condition. This interpretation, however, conflicts with our pronouncement that a loss of use of body parts is compensable if it is "to the same effect and extent as if they had been amputated or otherwise physically removed." *State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 67, 70 O.O.2d 157, 322 N.E.2d 660. This would include not only ankylosis, but any industrially induced condition that produced the requisite degree of loss—an interpretation consistent with R.C. 4123.95's requirement of liberal construction in favor of employees.

**{¶12}** We also disagree with claimant's proposal that a 54 percent permanent partial impairment entitles her to a full loss-of-use award. She relies on this provision of R.C. 4123.57(B):

**{¶13}** "The loss of a second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb; *the loss of more than one half of such thumb is considered equal to the loss of the whole thumb*." (Emphasis added.)

**{¶14}** Since 54 percent is more than one-half, claimant asserts a right to a full loss award. We, however, are not persuaded that the General Assembly intended mere numbers as the measuring stick for this award. The quoted paragraph defines what constitutes a one-half loss—the loss of the thumb's distal phalanx, not an impairment of 50 percent or more.

**{¶15}** The statute repeats this specific delineation with reference to fingers:

**{¶16}** "The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.

**{¶17}** "The loss of the middle, or second, phalange of any finger is considered equal to the loss of two-thirds of the finger.

**{¶18}** "The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger."

**{¶19}** This reinforces the idea that the standard is more anatomical than numeric for purposes of inferring the degree of loss. In some cases, the requisite degree of anatomic loss will be accompanied by a numeric assessment that indeed exceeds 50 percent. However, it is not an abuse of discretion for the commission to refuse an award for even a high percentage of loss of use if it is not accompanied by evidence of the statutorily required anatomical loss.

**{¶20}** Unfortunately, application of either of these principles here cannot proceed without further clarification. Two elements of the order demand elucidation: (1) extent of loss and (2) the evidence relied on. As to the former, the order's first paragraph implies that claimant does not have a total loss of use, while the last paragraph implies that she does. This is relevant because claimant contends that denial of an award was based *solely* on the absence of ankylosis. If the commission indeed found a loss of use but then denied compensation on the basis of absence of ankylosis, claimant must prevail. If, however, no total loss of use was found—as the commission and employer contend—then the additional reasoning is mere surplusage and does not affect the outcome.

**{¶21}** The matter of identification of the evidence relied on goes to this same point. The commission has seemingly relied on both Drs. Ward and Rutherford. The former found total loss of use, while the latter did not. Clarification will help address both the finding of the ultimate extent of loss and the question of "some evidence" to support it.

**{¶22}** The judgment of the court of appeals is reversed. The commission is ordered to reconsider the claim and issue an amended order.

Judgment reversed<br>and writ allowed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

Stephen E. Mindzak Law Offices, L.L.C., and Stephen E. Mindzak, for appellant.

Lee M. Smith & Associates Co., L.P.A., Kyle D. Martin and Lee M. Smith, for appellee Ohio Department of Mental Retardation and Developmental Disabilities.

Betty D. Montgomery, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee Industrial Commission.

Philip J. Fulton & Associates, Philip J. Fulton and William A. Thorman III, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

_____