THE STATE EX REL. ALCOA BUILDING PRODUCTS, APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Alcoa Bldg. Products v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.]

(No. 2003–1805—Submitted May 11, 2004—Decided July 7, 2004.)

———

**Per Curiam.**

{¶ 1} Appellee-claimant, Robert R. Cox, injured his left hand and arm in a 1986 workplace accident. Despite efforts to save the limb, claimant's left arm was eventually amputated just below the elbow. Continuing hypersensitivity at the amputation site has prevented claimant from ever wearing a prosthesis. Claimant's ongoing difficulties with his left arm have affected his right arm as well, with "rotator cuff tear and right rotator cuff tendonitis" also being an allowed part of his claim.

{¶ 2} Claimant received a scheduled loss award for his left-hand amputation under former R.C. 4123.57(B). In 2002, he moved for a scheduled award under the same statute for loss of use of his left arm. In support, he offered the June 24, 2002 report of Dr. Robert H. Perkins:

{¶ 3} "He had several operations to try to safe [sic] his hand but unfortunately none of these were successful and he eventually underwent a distal amputation of the left forearm. After this surgery, he had a lot of problems with neuropathic-type pain and underwent several further procedures to resect the neuroma. He also underwent several sympathetic blocks and eventually a dorsal sympathectomy in April of 1990. Unfortunately none of these procedures have allowed him to use his prosthesis. He has continued to have severe pain in his left stump area which has been very hypersensitive and has been absolutely impossible for him to use his prosthesis. Because of this, he has had to exclusively use his right upper limb as his left upper limb has been basically non-functional. He has developed subsequent problems [on the right arm] because of this including rotator cuff problems and carpal tunnel syndrome which I have been seeing him for. * * *

{¶ 4} "It is my belief that given the claimant's residual hypersensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without use of his left upper limb * * *."

{¶ 5} Appellant-employer, Alcoa Building Products, submitted a report from Dr. Ron M. Koppenhoeffer. While Dr. Koppenhoeffer agreed that claimant had a functional loss of use of his left arm, the fact that some of the limb remained intact foreclosed, in his opinion, a finding of anatomic loss of use.

{¶ 6} Alcoa also submitted a videotape from a prior investigation of claimant's physical capabilities. Many of the activities shown—such as petting his dog and driving—involved the right hand and arm. Left-sided activities included using his remaining left arm to push open a car door. Claimant was also filmed tucking paper under that arm.

{¶ 7} Appellee Industrial Commission of Ohio considered all of this evidence and gave claimant an award for loss of use of his left arm, relying on Dr. Perkins. Further appeal was refused.

{¶ 8} Alcoa petitioned the Court of Appeals for Franklin County for a writ of mandamus, alleging that the commission had abused its discretion in finding a total loss of use. The court of appeals found that for all practical purposes claimant had lost the use of his left arm to the same extent as if it had been amputated, and upheld the award.

{¶ 9} This cause is now before this court upon an appeal as of right.

{¶ 10} Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gass-*

*mann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190—construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403–404, 12 O.O.3d 347, 390 N.E.2d 1190. Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.

{¶ 11} Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker*.

{¶ 12} Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

{¶ 13} "Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of

the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

{¶ 14} This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

{¶ 15} "It is my belief that given the claimant's residual hypersensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."

{¶ 16} Accordingly, the commission did not abuse its discretion in awarding scheduled loss compensation for the loss of the left arm.

{¶ 17} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Dinsmore & Shohl, L.L.P., Brian P. Perry and Peter J. Georgiton, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee Industrial Commission.

Koltak & Gibson, L.L.P., and Peter J. Gibson, for appellee Cox.