DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Courtney Oswald, commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio ("commission") to vacate its order that denied relator's application for total loss of use of her left arm pursuant to R.C. 4123.57(B), and to order the commission to find that she is entitled to that award.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that there was some evidence in the record to support the commission's determination that relator did not, for all practical purposes, sustain a total loss of use of her left arm. Specifically, the magistrate noted that there was medical evidence that relator has supple range of motion in her left elbow and shoulder and that she can place her left hand over her head. There was also medical evidence that relator has grip in her left hand and that she is able to oppose her thumb and fingertips. Lastly, the commission had before it evidence that relator was using her left arm while at work the previous week. The magistrate found that these facts were some evidence that relator has not sustained a total loss of use of her left arm "for all practical purposes." Therefore, the magistrate has recommended that this court should deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision essentially arguing that the evidence relied upon by the commission and noted by the magistrate does not support the commission's denial of the award. Relator argues that she did not retain enough residual utility in her left arm to justify the denial of her application for total loss of use.
 {¶ 4} However, questions of fact and credibility of evidence are within the discretion of the commission as fact finder. The factors relied upon by the commission and noted in the magistrate's decision are some evidence supporting the conclusion that relator retained some practical use of her left arm. Although the degree of practical use retained by relator is certainly debatable, the fact remains that there is some evidence in the record to support the commission's determination that relator did not sustain a total loss of use of her left hand for all practical purposes. Certainly, the medical evidence indicating relator's range of motion, dexterity and strength, coupled with evidence that relator was using her arm while at work, is some evidence to support this determination. Therefore, we overrule relator's objections.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Sadler and Christley, JJ., concur.
Christley, J., retired, of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Courtney Oswald, :
 Relator, :
v. : No. 04AP-691
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Fairfield Medical Center, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on February 10, 2005 Law Offices of Thomas Tootle, and Thomas Tootle, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Earl, Warburton, Adams Davis, and Bruce L. Hirsch, for respondent Fairfield Medical Center.
In Mandamus
 {¶ 6} Relator, Courtney Oswald, has filed this original action, requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for total loss of use of her left arm, pursuant to R.C. 4123.57(B), and ordering the commission to find that she is entitled to that award.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on July 4, 1998, and her claim has been allowed for: "left wrist sprain; ligamentous tear of the left wrist; acute stress disorder; mood disorder due to medical condition; mixed disorders as reaction to stress; reflex sympathetic dystrophy/chronic regional pain syndrome left upper extremity."
 {¶ 8} 2. On February 13, 2003, relator filed a motion seeking a scheduled loss of use award pursuant to R.C. 4123.57(B) for the total loss of use of her left arm and for the payment of permanent total disability ("PTD") compensation pursuant to R.C. 4123.58(C).
 {¶ 9} 3. In support of her motion, relator submitted the January 9, 2003 report of Sterling W. Hedrick, M.D., who opined as follows:
Currently she has ongoing pain of a severe nature associated with limitation of the left wrist and left elbow area. She has lesser discomfort in the left shoulder and upper arm. * * * There is no obvious surgical solution to her problem.
* * *
Objectively, she shows swelling about the left wrists, which is markedly limited and extremely tender. There is ongoing tremor in the left hand and forearm. There is associated atrophy, discoloration and altered temperature in the left hand with hyperhidrosis. Her symptoms are markedly aggravated by any significant use of the left hand and forearm.
Functionally the individual has no effective use of the left hand, forearm and upper extremity. She cannot lift, pull, push or even do fine motor activity without subsequent pain. Unfortunately her situation is one of total disability with no resolution in sight. * * *
 {¶ 10} 4. The record also contains the October 21, 2002 report of Rebecca E. Holdren, M.D., who made the following findings:
* * * She has significant sensitivity over the left forearm. She hasweak grip. She is able to oppose each fingertip. No gross wasting. The left forearm is smaller than the right. She has full active ROM in theshoulder and elbow. * * *
(Emphasis sic.)
 {¶ 11} 5. The record also contains the April 17, 2003 report of Christian V. Madsen, M.D., who assessed a 74 percent left upper extremity impairment which equates to a 44 percent impairment of the whole person. Dr. Madsen opined that relator did not have a loss of use of her left arm to the extent of amputation or physical removal, that she has no significant functional reserve, but does have some function and the remote possibility of recovery. He noted further that relator was able to perform some work with her left hand in 2002, and that her condition has waxed and wained over the last three years and will likely continue to do so.
 {¶ 12} 6. Relator's application was heard before a district hearing officer ("DHO") on May 23, 2003, and resulted in an order granting the requested compensation for total loss of use of her left arm based upon the report of Dr. Hedrick.
 {¶ 13} 7. The employer appealed and additional evidence was submitted before the hearing took place before a staff hearing officer ("SHO").
 {¶ 14} 8. The June 24, 2003 report of David L. Shallcross, M.D., was submitted as evidence. Dr. Shallcross noted the following on physical examination:
On examination, this patient has 3 cm atrophy of the left forearm compared to the right. Her arms are symmetrically equal. Grip strength is diminished. Well healed scar noted. Pain with attempts to fully extend the elbow.
 {¶ 15} 9. Dr. Shallcross also noted that relator had been using her left upper extremity the week before, but noted that this had increased her pain.
 {¶ 16} 10. The June 27, 2002 report of Dr. Holt was also submitted. Dr. Holt noted as follows on physical exam:
She guards her left forearm. She has altered sensation over her wrist and hand. Supple range of motion of her elbow and shoulder. Comments she gets relief when she places her hand over her head. * * *
 {¶ 17} 11. The record also contains a follow-up report from Dr. Shallcross dated November 4, 2003, wherein he noted the following:
* * * On examination, the patient shows minimal atrophy of the left upper extremity. * * * She has full flexion movement of her fingers. She complains bitterly of movement of her elbow although there is no contracture. * * *
 {¶ 18} 12. The record also contains the July 7, 2003 affidavit of Daniel Kolinick who indicated that, on June 6, 2003, he observed relator holding a cell phone in her right hand while dialing a phone number by pushing buttons with her left hand.
 {¶ 19} 13. The matter was heard before an SHO on July 10, 2003, and resulted in an order denying the requested compensation as follows:
The evidence does not support the request.
Even the report of Dr. Hendrick [sic], which is relied upon by the injured worker, does not support the request.
Dr. Hendrick [sic] states the injured worker has no effective use of the arm. He states of the injured worker "She cannot lift, pull, push or even do fine motor activity without subsequent pain." While Dr. Hendrick [sic] reports a finding that the injured worker has a severely injured arm, his report does not support a finding that the injured worker has lost the arm to the same effect and extent as if it had been amputated.
The video of the injured worker obtained by the employer shows the injured worker carrying a small plastic bag under her left arm. Even this activity demonstrates a use greater than an amputation.
The injured worker's testimony regarding her difficulties and pain was completely credible, but the evidence does not establish the total loss of use of the arm.
 {¶ 20} 14. Relator filed an appeal and the commission held a hearing on the merits of relator's appeal. By order dated October 29, 2003, the commission issued an order granting relator's appeal and modifying the prior SHO decision. Nevertheless, the commission denied relator's request for compensation for the following reasons:
In his report, dated 04/17/2003, Dr. Madsen concludes that the injured worker has not sustained the permanent and total loss of use of her left arm to the extent of amputation or physical removal. Dr. Madsen indicates that there is some function in the left arm.
In office notes, dated 07/25/2002, Dr. Holt indicates that the injured worker has supple range of motion of her left elbow and shoulder. He notes that the injured worker reports that she gets relief when she places her left hand over her head.
In a 10/21/2002 report, Dr. Holdren indicates that the injured worker has a grip in her left hand. She is able to oppose her left thumb and fingertips. There is no gross wasting in the left arm. The injured worker has full active range of motion in the left shoulder and elbow.
In an office note, dated 06/24/2003, Dr. Shallcross indicates that the injured worker was using her left arm while at work just the week before.
In a notarized affidavit, dated 07/07/2003, Daniel Kolinick indicates that, on 06/06/2003, he observed the injured worker holding a cell phone in her right hand while she dialed a phone number by pushing the buttons with her left hand.
In letters, dated 06/27/2003 and 07/09/2003, Office Manager, Gloria Taylor, indicated that the injured worker was required to use both of her hands and arms while employed for Greenville Gynecology Group, a job that the injured worker was employed at from approximately 05/02/2002 through the middle of October 2002. The injured worker does not dispute that she did indeed work for that employer during that period.
As reflected in the transcript of the 07/10/2003 Staff Hearing Officer hearing, and as demonstrated by the injured worker before the commission at hearing, the injured worker is able to oppose each of her fingers to her thumb on her left hand. She also testified that she is able to use her left hand to squeeze the doctor's hand.
The videotape of the injured worker obtained and submitted by the employer shows that the injured worker is carrying a small plastic bag under her left arm. Even this activity demonstrates a use greater than an amputation of the entire left arm.
Counsel for the injured worker argued that the Industrial Commission should rely on the Court of Appeals decision, State ex rel. AlcoaBuilding Products v. Indus. Comm., 2003-Ohio-4767, issued 09/09/2003. However, the Industrial Commission finds that the Alcoa case is not applicable to the facts in this claim. In Alcoa, the injured worker had suffered an amputation almost to the level of the left elbow. The injured worker was unable to even attach a prosthesis to his left elbow. These facts are quite different from the facts in this claim. In this claim, the injured worker has not sustained any amputation, and is able to use her left hand and arm as documented above.
It is, therefore, the finding of the Industrial Commission that the injured worker has not established by a preponderance of the evidence that she has sustained the total loss of use of her entire left arm consistent with that of actual amputation or functional loss of use of her left arm and left hand as required under Ohio law.
 {¶ 21} 15. Relator's request for reconsideration was denied by the commission in an order mailed December 17, 2003.
 {¶ 22} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} Relator contends that the commission abused its discretion by denying her request for scheduled loss of use award when there was not "some evidence" in the record to support the commission's decision. For the following reasons, this magistrate disagrees.
 {¶ 25} R.C. 4123.57(B) provides, in pertinent part, as follows:
In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
* * *
For the loss of a hand, one hundred seventy-five weeks.
For the loss of an arm, two hundred twenty-five weeks.
 {¶ 26} Although the statute speaks only in terms with "loss," the Supreme Court of Ohio has held that "loss" includes not only loss by amputation, but, also, loss of use. State ex rel. Walker v. Indus. Comm.
(1979), 58 Ohio St.2d 402. In Walker, the court spoke in terms of a loss to the same effect and extent as if amputated or otherwise physically removed. Id. at 403.
 {¶ 27} In the present case, relator asserts that the recent Supreme Court of Ohio decision in State ex rel. Alcoa Bldg. Products v. Indus.Comm., 102 Ohio St.3d 341, 2004-Ohio-3166, should be applied, and that, when it is applied, she is entitled to the scheduled loss award. The commission considered this argument but found that Alcoa was not applicable to the facts of this case. For the following reasons, this magistrate agrees with the commission's assessment.
 {¶ 28} In Alcoa, the claimant had sustained an amputation of his left arm just below the elbow and, due to extreme sensitivity at the site of the amputation, he was unable to utilize a prosthetic device. Because there was some evidence that the claimant was able to hold a small wallet under his arm and was able to utilize the upper portion of his arm to push a door closed, the employer had argued that the claimant had not shown the total loss of use. This court found, and the Supreme Court of Ohio agreed, that the claimant had demonstrated that, "[f]or all practical purposes," the claimant had lost the use of his arm to the same effect and extent as if it had been amputated.
 {¶ 29} Relator argues that she has demonstrated the same loss, "for all practical purposes," of her left arm. However, the magistrate notes that the commission relied upon evidence which demonstrates that relator's loss was not, "for all practical purposes," total. For example, the commission cited Dr. Holt's report indicating that relator has supple range of motion of her left elbow and shoulder and that she can place her left hand over her head. The commission also relied upon the report of Dr. Holdren who noted that relator has grip in her left hand and that she is able to oppose her left thumb and fingertips, and that she has active range of motion in the left shoulder and elbow. Furthermore, the commission relied upon the June 24, 2003 office note of Dr. Shallcross indicating that relator was using her left arm while at work the previous week. The commission also relied on the observations of its own hearing officer that relator could oppose her fingers with her thumb. While relator certainly has a substantial loss of use of her arm, the commission relied on evidence that she has not sustained a total loss "for all practical purposes." Relator can move her fingers, her hand, her wrist, her elbow and her shoulder. Unlike the claimant in Alcoa, who could only use his shoulder to move his stump of an arm to which no elbow, wrist, hand or fingers were attached, there is "some evidence" in this record upon which the commission relied in denying her application.
 {¶ 30} Because questions of fact and credibility of evidence are clearly within the discretion of the commission as fact finder, Teece,
supra, this magistrate finds that there is some evidence in the record to support the commission's determination that relator did not sustain a total loss of use of her left arm.
 {¶ 31} Accordingly, it is the magistrate's decision that relator's request for a writ of mandamus should be denied.