DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Oris M. Hicks, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him R.C. 4123.57(B) compensation for the alleged loss of use of the left leg, and to enter an order granting said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator presents four objections. Relator first asserts that the magistrate erred in concluding that the "functional" loss of use of his left leg was insufficient to support an award for the total loss of use of his leg. Relator contends this standard is inconsistent with State exrel. Alcoa Bldg. Products v. Indus. Comm., 102 Ohio St.3d 341,2004-Ohio-3166, in which the court found that awards, pursuant to R.C.4123.57(B), may compensate for a "loss" when there has been a loss of use of a body member "for all practical purposes." However, the magistrate never found that the functional loss of use of relator's leg was insufficient to support an award under R.C. 4123.57(B). Rather, the magistrate's discussion of "functional loss" was merely a part of her discussion of two Ohio Supreme Court cases issued pre-Alcoa. Later in the decision, the magistrate specifically acknowledged the "for all practical purposes" standard in Alcoa but found that Dr. Donald Tosi opined relator had only a 30 percent reduction in the use of his leg, and Dr. Susheel Kakde concluded relator had not suffered a complete loss of use of his leg. We agree that neither Dr. Tosi's nor Dr. Kakde's opinion can be interpreted to be equivalent to a finding that relator had lost use of his leg "for all practical purposes." Therefore, this objection is without merit.
 {¶ 4} Relator next asserts that the magistrate erred in finding that Dr. Tosi observed that he "walked, albeit slowly and with a knee brace, into the exam room." Dr. Tosi actually stated in his report: "The Injured Worker's gait was slow. He required the assistance of a cane. He uses a motorized wheelchair. He stated, `I got a big electric scooter that I use.' He also wears a left leg brace." Relator maintains that "gait" can mean different things, including merely dragging the leg without actual independent movement of the leg itself. However, we do not find the magistrate's description of Dr. Tosi's statement erroneous, given Dr. Tosi's later statement in his report that relator "is able to walk with the use of a brace." Although relator contends that Dr. Tosi did not identify any independent movement or strength in his leg, that Dr. Tosi found only a 30 percent reduction in the use of his leg would indicate Dr. Tosi was not of the opinion that his leg was without any movement or strength. Therefore, this objection is without merit.
 {¶ 5} Relator next argues that the magistrate erred in concluding that the use of artificial devices, such as a leg brace and cane, constitutes use of the leg. Relator objects to the magistrate's finding that "both doctors, upon whose reports the commission relied, stated that relator could ambulate with the aid of a brace and cane and both opined that he did not suffer a total loss of use." Relator maintains that the use of a prosthetic device does not preclude a finding of loss of use for all practical purposes, and its use is clearly distinguishable from use of the actual limb or body member itself. Given our findings with regard to relator's first two objections, we cannot agree that the magistrate equated the use of a brace and cane with the use of the leg. The magistrate never found that the use of artificial devices constitutes use of the leg. The magistrate's decision was based upon the fact that neither Dr. Tosi nor Dr. Kakde found relator had suffered a total loss of use. Because both doctors found there was not a total loss of use of relator's leg, their findings that relator could walk with the aid of a brace and cane imply both believed relator's ability to walk was not wholly dependent upon the use of the devices. Therefore, relator's objection is without merit.
 {¶ 6} Relator asserts in his final objection that the magistrate erred in finding that there was nothing inherently wrong with the medical reports of Drs. Tosi and Kakde. Relator maintains that these reports contained only conclusory statements that did not reference any objective physical or medical evidence. We find relator's argument not well-taken. Relator essentially questions the credibility and weight of the evidence; however, these determinations are within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. Further, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is inappropriate. State ex rel. Lewis v. DiamondFoundry Co. (1987), 29 Ohio St.3d 56. Here, although the degree of use retained by relator is subject to dispute, there exists some evidence in the record to support the commission's determination that relator did not sustain a total loss of use of his left leg for all practical purposes. Dr. Kakde stated, "I do not believe the patient has a complete loss of use of his left leg, because he does walk from the back to the front of his house[.] [H]e said it gives him a heck of a time, but he is able to do it." Dr. Tosi opined that relator's conversion disorder accounted for only a 30 percent reduction in the use of his left leg. Though the doctors did not support their conclusions with extensive explanatory dialogue, we find the doctors' reports, and the conclusions contained therein, were sufficient to constitute some evidence to support the commission's order.
 {¶ 7} Relator also claims under this objection that, in order to identify some evidence in the record, the commission was required to indicate what "factors" from the doctors' reports it found persuasive, citing State ex rel. White v. U.S. Gypsum Co. (1990), 49 Ohio St.3d 134. However, White is distinguishable. In White, the commission denied a loss-of-use award based on doctors' reports that specifically found that claimant did have a permanent and total loss. The Ohio Supreme Court ordered the commission to clarify its order because it was given no explanation as to what "factors" the commission found persuasive in the doctors' reports to reach a decision that was contrary to the doctors' conclusions. Id. at 137. In the present case, however, the commission cited evidence that indicated relator maintained some practical use of his leg, which is consistent with a finding that relator is not entitled to a loss-of-use award. As the commission's finding was consistent with the conclusions reached by the doctors, no further explanation as to why it was relying upon the doctors' reports was necessary. See State exrel. Welker v. Indus. Comm. (2001), 91 Ohio St.3d 98 (recognizing the same distinction). Therefore, this objection is without merit.
 {¶ 8} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Klatt and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Oris M. Hicks, :
 Relator, :
 v. : No. 04AP-1359
Industrial Commission of Ohio and : (REGULAR CALENDAR)
Metatec/Discovery Systems, Inc., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 15, 2005 Barkan Barkan Co., L.P.A., Richard J. Forman and Julia B. Dillon,
for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} Relator, Oris M. Hicks, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's motion for a scheduled loss of use of his left leg and ordering the commission to find that he is entitled to a scheduled loss award under R.C. 4123.57 for the total loss of use of his left leg.
Findings of Fact:
 {¶ 10} 1. Relator sustained a work-related injury on October 15, 1993, and his claim has been allowed for: "concussion head; abrasion face, scalp, and neck; conversion reaction with left side paresthesia and depressive disorder; deep vein thrombosis left leg; contusion thoracic spine; contusion lumbar spine; contusion chest wall; contusion left hip; sprain thoracic spine; sprain lumbar spine."
 {¶ 11} 2. Relator was granted permanent total disability ("PTD") compensation by order of the commission dated February 19, 1997. The commission's decision was based upon the allowed conditions alone without consideration of the nonmedical disability factors. Specifically, the commission found that, while relator's left side hemiparesis is not organic in nature, it nevertheless precludes relator from performing any sustained remunerative employment.
 {¶ 12} 3. On November 20, 2001, relator filed a motion requesting the payment of permanent partial disability compensation for total loss of use of his left leg. In support, relator attached two reports from his treating physician Charles B. May, D.O. In his May 27, 2000 report, Dr. May indicated that relator was having difficulties with his KAFO knee brace and that, on one occasion, the knee brace unlocked and caused relator to fall down a set of steps. The brace itself was not repairable and Dr. May requested that relator be provided with a new one. In his July 4, 2001 report, Dr. May stated as follows:
* * * He has worn a knee, ankle, foot orthotic brace which does allow him to weight bear somewhat on the left side and has been able to ambulate on occasion using a forearm crutch and the leg brace. He also has a motorized wheelchair which he uses quite often. As you also know his left leg condition is due solely to his conversion disorder. It is not due to any type of spinal cord injury or nerve injury or neural muscular injury. In any event, this has been present for more than seven years and is certainly permanent in nature. He has been evaluated by multiple psychologists and psychiatrists, and there is no hope that this condition will ever change.
Functionally, he has lost the use of his left lower extremity. I believe that this would qualify for a total loss of use of his left lower extremity. His left lower extremity is functional only if he wears a brace and he cannot weight bear or walk without a brace and ambulatory aids.
 {¶ 13} 4. Relator was also examined by Donald J. Tosi, Ph.D., who issued a report dated January 8, 2002. Dr. Tosi noted that relator walked, albeit slowly and with a knee brace, into the exam room for his appointment. Dr. Tosi opined as follows:
The Injured Worker reports that he has no use in his left arm and left leg, but that he is able to walk with the use of a brace. Conversion Disorder (300.11) and Depressive Disorder NOS (311) were allowed in this claim. Specifically, the injury affected the Injured Worker's left leg. Conversion reaction with left sided paresthesia would account for the reduced use of his left arm and left leg.
Considering the psychological conditions alone in this claim, Depressive Disorder (311), accounts for no loss of any physical functioning, Conversion Disorder accounts for a 30% reduction in the use of the Injured Worker's left leg and a 50% reduction in the use of the left arm. Conversion Disorder has been recognized by several mental health professionals.
 {¶ 14} 5. Relator was also examined by Susheel S. Kakde, M.D., who issued a report dated June 13, 2002. Dr. Kakde noted that relator indicated he has no movement in his left leg with or without the knee brace. Dr. Kakde noted that there was some disuse atrophy of the left leg and left arm and that relator did not move either appendage during his visit. Relative to the question of whether or not relator has sustained a total loss of use of his left leg, Dr. Kakde stated as follows:
* * * The issue raised here is about complete loss of use. The loss of use in the patient's current condition is because of the patient's will, of not to use the left leg. There is nothing organically wrong with the patient's left leg. The only way to find out the patient's physical capacity [is to] do a residual functional capacity evaluation, and I believe this could be done objectively by sending the patient to the Ohio Diagnostic Services[.] * * *
* * *
After reviewing all available medical records and performing this history and physical examination, it is my opinion that the patient does not have a permanent loss or total loss of use as a result of amputation or contractures due to the scars, injuries, or ankyloses. The patient has a loss of use because of his perception which is consistent with his conversion reaction. The patient is evaluated for permanent partial impairment for the conversion reaction, so I do not believe the patient can be evaluated for the physical condition which is a result of his psychological condition. If the patient's perception changes, and he has no more conversion reaction, then the patient would be able to use the left side of his body. Therefore, his perception can change, and there is no physical permanent change on the left side of the body.
* * *
I do not believe the patient has a complete loss of use of his left leg, because he does walk from the back to the front of his house, he said it gives him a heck of a time, but he is able to do it. So, until an objective physical capacity evaluation is done, I do not think we can say that the patient has any loss of use of his left leg due to the allowed physical conditions of the claim. * * *
 {¶ 15} 6. Relator's application was heard before a district hearing officer ("DHO") on October 8, 2002 and resulted in an order denying the requested compensation. The DHO specifically relied upon the medical reports of Drs. Tosi and Kakde and stated as follows:
After a review of the medical evidence the District Hearing Officer finds that the claimant has not suffered a total loss of use of his left leg. According to the report of Dr. Tosi, the claimant's conversion disorder accounts for 30% reduction in the use of his left leg, which is clearly not a total loss of use. Moreover, Dr. May, the claimant's treating physician, opined that the claimant does have use of his leg if he wears a brace. Additionally, it is noted that Dr. Kakde opined that the claimant does not have a permanent loss or total loss of use as a result of amputation or contracture due to scars, injuries or ankyloses. Dr. Kakde found that there is nothing organically wrong with the claimant's left leg. Instead the inability to use the left leg is due to the claimant's will not to use it, that is his perception of the weakness of his left leg.
 {¶ 16} 7. Relator appealed and the matter was heard before a staff hearing officer ("SHO") who issued an order dated December 12, 2002. The SHO affirmed the prior DHO order denying the requested compensation and stated as follows:
The Staff Hearing Officer affirms the finding of the District Hearing Officer that the claimant has not suffered a total loss of use of his left leg. According to the report of Dr. Tosi, the claimant's conversion disorder accounts for 30% reduction in the use of his left leg. The claimant's physician of record, Dr. May, opines that the claimant does not have loss of use of his leg if he wears a brace. Dr. Kakde opined that the claimant does not have a permanent loss or total loss of use as a result of the 10/15/1993 industrial injury. Dr. Kakde opined that there is nothing organically wrong with the claimant's left leg.
 {¶ 17} 8. Relator's appeal was refused by order of the commission dated January 4, 2003.
 {¶ 18} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. For the reasons that follow, this magistrate concludes that relator is not entitled to a writ of mandamus.
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} In this mandamus action, relator asserts that the commission is simply refusing to acknowledge that he has lost the total use of his left leg due to the allowed psychological condition of conversion disorder in the absence of an organic physical reason for the loss. Relator asserts that all of the medical evidence supports his assertion that he cannot use his left leg at all. Furthermore, relator contends that none of the medical evidence relied upon by the commission supports the commission's determination. For the reasons that follow, this magistrate disagrees.
 {¶ 22} Pursuant to R.C. 4123.57(B), a claimant may be entitled to PTD benefits for specific scheduled losses due to a work-related injury. R.C. 4123.57(B) provides, in pertinent part, as follows:
In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
* * *
For the loss of a leg, two hundred weeks.
 {¶ 23} Although the statute speaks only in terms of "loss," the Supreme Court of Ohio has held that "loss" includes not only loss by amputation, but, also, loss of use. State ex rel. Walker v. Indus. Comm.
(1979), 58 Ohio St.2d 402. In Walker, the court spoke in terms of a loss to the same effect and extent as if amputated or otherwise physically removed. Id. at 403. The court stated further in Walker that when a particular member of the body has not been amputated or otherwise physically removed, the injured worker must suffer a loss of that member to the same effect and extent as if the member had been amputated or otherwise physically removed.
 {¶ 24} In State ex rel. Pollack v. Indus. Comm. (Jan. 18, 2000), Franklin App. No. 99AP-95, this court considered a situation where the claimant requested compensation for the total loss of use of both his legs. The claimant required the full-time use of a wheelchair and was only capable of taking a few short steps with the aid of a walker. One could argue that the claimant had effectively suffered a total "functional" loss of his legs; however, in applying State ex rel.Gassmann v. Indus. Comm. (1975), 41 Ohio St.2d 64 and Walker, this court stated that, although the claimant has little more than minimal use of his legs, this minimal ability is not synonymous with total and permanent paralysis as required by the law.
 {¶ 25} In the present case, the commission relied upon the medical reports of Drs. Tosi and Kakde. Dr. Tosi noted that relator was able to ambulate, with the aid of a brace and cane, into the office. Dr. Tosi opined that relator had a 30 percent reduction in the use of his left leg. Furthermore, Dr. Kakde indicated that it would be impossible to note the full extent of relator's loss without a residual functional capacity evaluation being performed. Without such evidence, Dr. Kakde opined that relator did not suffer a total loss of use of his left leg. Furthermore, the fact that Dr. Kakde did note some disuse atrophy of the left leg, does not necessarily indicate a total loss of use of the left leg. Finding nothing inherently wrong with the medical reports of Drs. Tosi and Kakde, the magistrate finds that those reports did constitute some evidence upon which the commission could rely.
 {¶ 26} Although relator argues that the commission is refusing to acknowledge the possibility that a claimant could lose the total loss of an appendage based solely upon psychological conditions in the absence of an organic physical condition, nothing in the commission's order indicates that the commission has taken that position. Instead, the commission specifically relied upon reports of medical doctors, one of whom saw relator ambulate into the office, and both of whom indicated that he did not have a total loss of use of his left leg. As such, nothing in the record supports relator's argument that the commission denied him this compensation simply because it was the psychological condition of conversion disorder which was causing him to have such severe difficulties with his left leg.
 {¶ 27} Relator cites State ex rel. Alcoa Bldg. Products v. Indus.Comm., 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 10, and argues that he has lost the use of his leg "for all practical purposes." Relator argues that his leg is a lifeless limb serving as nothing more than a counter balance which he would have to drag behind if it were not for the aid of the brace. However, as stated previously, both doctors, upon whose reports the commission relied, stated that relator could ambulate with the aid of a brace and cane and both opined that he did not suffer a total loss of use. In Alcoa, at ¶ 4, the commission relied upon the report of Dr. Perkins who opined as follows:
"It is my belief that given the claimant's residual hypersensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without use of his left upper limb * * *."
 {¶ 28} While this case may be a close call, the magistrate finds that the commission did not abuse its discretion by relying upon the medical reports of Drs. Tosi and Kakde. Inasmuch as credibility and weight of evidence are clearly within the discretion of the commission as fact finder, Teece, the magistrate does not find an abuse of discretion in this case. In Alcoa, the commission relied on a doctor who opined that the claimant had a total loss of use and, in the present case, the commission relied on doctors who opined that relator did not suffer a total loss of use.
 {¶ 29} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying him a total loss of use award relative to his left leg and relator's request for a writ of mandamus should be denied.