THE STATE EX REL. KROGER COMPANY, APPELLEE, *v.* JOHNSON ET AL.,

APPELLANTS.

[Cite as *State ex rel. Kroger Co. v. Johnson,*

128 Ohio St.3d 243, 2011-Ohio-530.]

*Workers' compensation — Total-loss-of-use compensation for a limb with limited capacity — R.C. 4123.57(B) — An internally inconsistent medical report is not evidence on which the Industrial Commission can rely — Judgment reversed, and writ granted.*

(No. 2009-2193 — Submitted January 4, 2011 — Decided February 10, 2011.)

APPEAL from the Court of Appeals for Franklin County, No. 09AP-89,

2009-Ohio-5781.

_____

**Per Curiam**.

**{¶ 1}** At issue is appellant Dan C. Johnson's application for R.C. 4123.57(B) scheduled-loss compensation for an alleged total loss of use of his right hand. In 2007, Johnson had a sudden onset of pain and coolness in his right ring and little fingers while working as a meat cutter for appellee, Kroger Company. The mechanics of the injury are not clear from the record, but all physicians agree that Johnson's condition is occupationally related.

**{¶ 2}** A vascular specialist diagnosed an embolism in the right extremity, and in the months to follow, several unsuccessful attempts were made to restore sufficient blood flow to Johnson's last three right fingers. By mid-2008, these three fingers were constantly cold due to a lack of circulation. Johnson also experienced continued stiffness, weakness, and severe temperature-induced pain and numbness that together rendered the three fingers nonfunctional. Although his thumb and index fingers were unaffected, Johnson's doctors permanently

restricted him from using his right hand for pulling, pushing, grasping, and fine manipulation. Johnson, who worked in a freezer and other environments well below room temperature, was also prohibited from exposing his right hand to extreme heat or cold.

**{¶ 3}** Johnson applied for compensation under R.C. 4123.57(B), alleging a total loss of use of his right hand. On June 20, 2008, he was examined by Dr. Nancy Renneker, who concluded that Johnson had a 27 percent impairment of his right hand. This report was followed by an addendum from Renneker indicating that based upon her June 20, 2008 examination, Johnson had a "functional loss of use of his right hand."

**{¶ 4}** Kroger submitted an August 2008 report from Dr. Perry N. Funk, who agreed with Johnson's restrictions but did not believe that Johnson had lost the total use of his hand:

**{¶ 5}** "Based on today's examination and review of medical documentation, it is my opinion that Mr. Johnson has not sustained a total loss of use of his right ring finger/right hand as a direct result of the industrial injury of this claim. Ohio law defines loss of use of an extremity to be the same as if the extremity had been amputated. An individual does not have a 'loss of use' if he can use the extremity even in a limited capacity. Based on today's examination, it is clear that Mr. Johnson does have use of his right hand and right ring finger even though the use is limited. He does not therefore qualify for total loss of use of the right ring finger/right hand."

**{¶ 6}** A district hearing officer for appellant Industrial Commission of Ohio relied on Dr. Funk's opinion to deny Johnson's motion for scheduled-loss compensation under R.C. 4123.57(B). A staff hearing officer reversed. The order expressly relied on Dr. Renneker's June 20, 2008 report, but also appeared to rely in part on the restrictions contained in Dr. Funk's report. The hearing officer was

2

additionally persuaded by Johnson's testimony, and in awarding compensation, wrote:

**{¶ 7}** "The injured worker testified at hearing that he does his activities of daily living with his non-dominant left hand. He indicated that he can perform limited writing and does retain pinch of his thumb to finger. However, the mere fact that the injured worker can hold a pen and retains pinching ability between two of his fingers does not bar him from a total loss of use award[,] as the injured worker in the [*State ex rel.*] *Alcoa* [*Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946] case retained the residual utility to hold a newspaper and push a car door open[,] and he was still found eligible for a total loss of use award. The Court noted it is not necessary that the injured worker's injured member be of absolutely no use in order for the injured worker to have lost the use of it for all practical intents and purposes. The permanent restrictions in the instant claim are of such severity as to lead the Staff Hearing Officer to find that the injured worker is entitled to a loss of use of the right hand[,] as for all practical intents and purposes, the injured worker's remaining use of his right hand is as if it had been amputated."

**{¶ 8}** Kroger filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in granting a total-loss-of-use award. The court of appeals agreed, after finding that the commission's order was not supported by any evidence. *State ex rel. Kroger Co. v. Johnson*, Franklin App. No. 09AP-89, 2009-Ohio-5781, ¶ 6. The court held that Dr. Renneker's opinion was not evidence on which the commission could rely because there was too great an inconsistency between her assessment of a 27 percent hand impairment and her assertion that Johnson had lost all use of that member. Id. It accordingly issued a writ that both vacated the commission's award and required the agency to issue a new order denying compensation. Id. at ¶ 8.

**{¶ 9}** Johnson and the commission now appeal to this court as of right.

**{¶ 10}** Scheduled-loss compensation was originally limited to amputation, with the obvious exceptions of hearing and sight. *State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 65-66, 70 O.O.2d 157, 322 N.E.2d 660. Coverage later expanded to "loss of use" in the wake of *Gassmann* and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 404, 12 O.O.3d 347, 390 N.E.2d 1190, which involved paraplegia. These cases construed "loss" for purposes of R.C. 4123.57(B) (formerly R.C. 4123.57(C), 135 Ohio Laws, Part I, 1690, 1701-1702) to include both amputation and loss of use without severance. We reasoned that a paraplegic had "[f]or all practical purposes * * * lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann* at 67.

**{¶ 11}** In 2004, we revisited this standard and clarified that " 'it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes.' " *Alcoa*, 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, ¶ 13, quoting *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251. In *Alcoa*, we considered the loss-of-use application of a claimant whose left arm had been amputated below the elbow. Id. at ¶ 1. Hypersensitivity prevented the claimant from using a prosthesis, but his employer nonetheless opposed compensation for a total loss of use of the arm, arguing that the claimant had been observed tucking a paper under his remaining arm segment and using his arm segment to push open a car door. Id. at ¶ 6. Alcoa claimed that these functions would be foreclosed to one whose arm had been severed at the shoulder and, under a strict interpretation of *Gassmann* and *Walker*, precluded a total loss award. Id. at ¶ 10.

**{¶ 12}** We rejected Alcoa's argument:

**{¶ 13}** "Alcoa urges the most literal interpretation of [the *Gassmann* and *Walker*] rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met.  The court of appeals, on the other hand, focused on the opening four words, 'for all practical purposes.'  Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it.  For the reasons to follow, we affirm that judgment.

**{¶ 14}** "Alcoa's interpretation is unworkable because it is impossible to satisfy.  *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed.  As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award.  And this will always be the case in a nonseverance situation.  If nothing else, the presence of an otherwise useless limb still acts as a counterweight – and hence an aid to balance – that an amputee lacks.  Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point.  It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar – as here – scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper.  Surely this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker*." Id. at ¶ 10-11.

**{¶ 15}** Accordingly, Johnson's allegation of a total loss of use is not automatically defeated merely because his right hand retains some residual function; the pivotal question is how much function remains.  As a general rule, function is expressed in one of two ways – numerically or narratively. As to the former, many medical reports denominate loss as a percentage figure.  A 100

5

percent loss is obviously shorthand for a total loss, but there is no rule that makes 100 percent the only figure that can substantiate a total-loss-of-use award. It is unfathomable that a 98 percent loss of function, for example, would not qualify as a total loss. To the contrary, a 75 to 80 percent loss of vision was sufficient to support a total-loss award where the amount of loss rendered the claimant legally blind. *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, ¶ 20, 25. On the other hand, a high level of impairment does not necessitate a finding of total loss. In *State ex rel. Isaacs v. Indus. Comm.*, 96 Ohio St.3d 82, 2002-Ohio-3613, 771 N.E.2d 852, ¶ 8-9, we upheld the commission's denial of total-loss compensation to a claimant with a 70 percent foot impairment. In addressing the medical evidence on which the commission relied, we wrote:

{¶ 16} "This is not a case where several doctors found a total loss of use and a dissenter found nothing wrong. Dr. Wunder found much wrong with claimant's foot and felt that claimant had a high (seventy percent) degree of loss. He just did not feel that claimant had crossed the threshold from high to total loss of use. That is the sole relevant distinction between his opinion and the others, and it was, of course, his prerogative to make. Dr. Wunder's reports are, therefore, 'some evidence' supporting the commission's decision." Id. at ¶ 8.

{¶ 17} Because percentage figures alone do not always tell the whole story, a doctor's opinion as to whether "for all practical purposes" the claimant has lost all use of the affected member is critically important. When a medical report contains both a narrative opinion and a percentage figure — as is frequently the case — the two must be reconcilable, because an internally inconsistent medical report is not evidence on which the commission can rely. *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 449, 633 N.E.2d 528.

**{¶ 18}** In the instant case, the court of appeals found that Dr. Renneker's assessment of a 27 percent hand impairment could not be reconciled with her conclusion that Johnson had lost the total use of that member. We agree. "Impairment" is defined as the "amount of a claimant's anatomical and/or mental loss of function." *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 171, 31 OBR 369, 509 N.E.2d 946. Johnson's 27 percent loss of function meant that he retained 73 percent of his hand's use, which does not equate to a total loss.

**{¶ 19}** Appellants claim that this discrepancy is immaterial because the two findings were not contained in the same report – one was in the original report and the other in the addendum. We disagree. This is not a situation where the two findings were generated at two different times based on two different examinations. Both were based on Dr. Renneker's lone June 20, 2008 exam, and while the addendum also took into account Dr. Funk's findings, there is nothing in the addendum to indicate that Dr. Renneker believed her initial 27 percent assessment was no longer valid. Cumulatively, this means that Renneker was still reporting both a 27 percent impairment and a total loss of use.

**{¶ 20}** The court of appeals ultimately concluded that the disqualification of Dr. Renneker's reports required a denial of compensation. *Kroger*, 2009-Ohio-5781, ¶ 6. This was presumably based on the court of appeals' belief that the staff hearing officer relied on no other evidence that supported a total loss of use. This may or may not be true.

**{¶ 21}** The staff hearing officer also cited with approval several of Dr. Funk's medical findings, so there appears to have been at least some reliance on his report. This reliance would not initially appear to advance Johnson's cause because Dr. Funk specifically stated that Johnson did not have a total loss of use. Dr. Funk, however, used an incorrect standard to evaluate the degree of loss. According to Dr. Funk, "Ohio law defines loss of use of an extremity to be the

same as if the extremity had been amputated. An individual does not have loss of use if he can use the extremity even in a limited capacity." *Alcoa* qualifies this assertion: "it is not necessary that the injured member * * * be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." Id., 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, ¶ 13.

{¶ 22} Given the severity of the restrictions noted by Dr. Funk, it is possible that he might have reached a different conclusion had he realized that residual use does not necessarily bar an award. For this reason, we grant a writ and return the cause to the commission for further consideration.

{¶ 23} The judgment of the court of appeals is reversed, and a writ is issued that returns the cause to the commission for further consideration.

Judgment reversed

and writ granted.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents and would reverse the judgment of the court of appeals and reinstate the order of the Industrial Commission.

_____

Bugbee & Conkle, L.L.P. and Janelle M. Matuszak, for appellee.

Agee, Clymer, Mitchell & Laret, Robert M. Robinson, C. Russell Canestraro, and Eric B. Cameron, for appellant Dan C. Johnson.

Michael DeWine, Attorney General, and Charissa D. Payer, Assistant Attorney General, for appellant Industrial Commission.

_____