[Cite as *State ex rel. Eaken v. Ohio Dept. of Natural Resources*, 2014-Ohio-5662.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Robert Eaken, | : | |
| Relator, | : | |
| | : | No. 13AP-797 |
| v. | : | (REGULAR CALENDAR) |
| Department of Natural Resources and Industrial Commission of Ohio, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 23, 2014

*The Mikulka Law Firm, LLC,* and *Angela J. Mikulka,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis*, for respondent Industrial Commission of Ohio.

*Isaac, Wiles, Burkholder & Teetor, LLC,* and *J. Miles Gibson,* for respondent Department of Natural Resources.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Robert Eaken, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its October 18, 2012 order exercising continuing jurisdiction of

the June 28, 2012 staff hearing officer ("SHO") order granting relator scheduled loss compensation for the loss of use of his right arm, and to reinstate the June 28, 2012 order.

{¶ 2}    The court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus.

{¶ 3}    As the magistrate sets out more fully, on February 5, 2008, relator injured his right shoulder and spine while trying to catch a falling battery when he was employed as a mechanic for respondent, Ohio Department of Natural Resources ("employer"). Industrial claim No. 08-809835 allowed the following conditions: cervical sprain/strain, thoracic strain/sprain, right shoulder strain/sprain, herniated disc C5-6, cervical spinal stenosis C5-6, and tear right supraspinatus.  Relator underwent neck surgery on May 21, 2009.  On November 11, 2011, relator moved for scheduled loss compensation under R.C. 4123.57(B) for the alleged loss of use of his right arm.  At the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator underwent an independent medical examination performed by Dr. Arvin Gallanosa.  In his narrative report, Dr. Gallanosa noted that relator "does have total permanent loss of use of the right upper limb," but Dr. Gallanosa further noted "it is unclear whether this is due to his allowed conditions of herniated disc and cervical stenosis."

{¶ 4}    On March 8, 2012, a district hearing officer ("DHO") issued an order denying relator's motion for scheduled loss compensation.  Relator appealed, and the bureau requested he undergo an examination by Dr. Stephanie Kopey to determine whether relator was temporarily totally disabled from January 27, 2012 to approximately May 18, 2012.  In her report from the March 22, 2012 examination, Dr. Kopey determined relator is temporarily totally disabled as a result of the work-related accident and allowed condition of C5-6 herniated disc.  Relator then underwent an examination by Dr. Matthew D. McDaniel on April 18, 2012, who concluded "the medical evidence does not support that [relator] sustained a total loss of use of the right arm secondary to the allowed conditions."

{¶ 5}    On June 28, 2012, the SHO issued an order vacating the DHO's March 8, 2012 order and granting relator's motion for R.C. 4123.57(B) compensation.  The employer administratively appealed the SHO's order, and that appeal was refused by

another SHO in an order mailed July 26, 2012.  The employer moved for reconsideration on August 9, 2012, alleging the SHO's June 28, 2012 order contained clear mistakes of law and fact.  A hearing occurred October 8, 2012.  Subsequently, on December 15, 2012, the three-member commission mailed an order exercising continuing jurisdiction over the SHO's June 28, 2012 order and denied relator's motion for R.C. 4123.57(B) scheduled loss compensation on the basis that the employer met its burden of proving that the SHO's order contains a clear mistake of law.  This mandamus action followed, and the magistrate agreed the SHO's order contained a clear mistake of law.

## I.    Relator's Objections

{¶ 6}   Relator sets forth the following objections to the magistrate's decision:

> [I.] The Magistrate mis-characterized the SHO's use of the Arvin Gallanosa, M.D., report;
>
> [II.] The Magistrate misunderstood the import of the report of [Stephanie] Kopey, D.O.;
>
> [III.] The Magistrate improperly weighed the evidence, which remained the sole province of the SHO; and
>
> [IV.] The Magistrate failed to identify a legitimate clear mistake of law which would have vested continuing jurisdiction in the Industrial Commission.

## II.    Discussion

### A. First Objection—Dr. Gallanosa's Report

{¶ 7}   In his first objection, relator contends the magistrate mischaracterized the SHO's use of Dr. Gallanosa's report.  We disagree.  As the magistrate explained, "[w]hile Dr. Gallanosa determined from his examination that relator 'does suffer the total functional loss of use of the right arm,' he also found that 'he is unable to causally relate this loss of use to allowed conditions in this claim.' "

{¶ 8}   In order to establish a right to a workers' compensation benefit for harm resulting from an accidental injury, it is necessary for the claimant to show, by a preponderance of the evidence, that a causal relationship existed between his injury and the harm.  *Fox v. Indus. Comm.*, 162 Ohio St. 569 (1955), paragraph one of the syllabus.  As the magistrate concluded, Dr. Gallanosa's report cannot be used to support a grant of loss of use compensation.  Dr. Gallanosa's report explicitly stated he could not find a

causal relationship between the loss of use and the allowed conditions. Thus, it was a mistake of law for the SHO to rely on Dr. Gallanosa's report to establish a causal relationship for the loss of use. Relator's first objection is overruled.

## B. Second Objection—Dr. Kopey's Report

{¶ 9} In his second objection, relator argues that the magistrate misunderstood the import of the report of Dr. Kopey. Dr. Kopey did not render an opinion as to total functional loss of use of the right arm. As the magistrate explained, Dr. Kopey examined relator to determine whether relator was temporarily totally disabled. The standard for determining temporary total disability is whether the claimant is unable to return to his former position of employment due to the industrial injury. Dr. Kopey determined the medical documentation supported relator was temporarily totally disabled and that the period of disability was related to the allowed condition of C5-6 herniated disc. However, at no point did Dr. Kopey render an opinion as to whether relator suffered loss of use under R.C. 4123.57(B) or whether the alleged loss of use was causally related to the allowed conditions. R.C. 4123.56 (temporary total disability compensation) and R.C. 4123.57(B) (scheduled loss compensation) depend on two distinct inquiries, and Dr. Kopey's report did not contain information sufficient to determine whether R.C. 4123.57(B) compensation was warranted. We, therefore, overrule relator's second objection.

## C. Third and Fourth Objections—Continuing Jurisdiction and Weighing the Evidence

{¶ 10} Relator's third and fourth objections are interrelated and we address them together. Relator's third objection alleges the magistrate weighed the evidence, which remained the sole province of the SHO, and relator's fourth objection alleges the magistrate failed to identify a legitimate clear mistake of law which would have vested jurisdiction in the commission.

{¶ 11} Continuing jurisdiction is not unlimited and "can be invoked only where one of these preconditions exist: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14, citing *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶ 12} The commission stated that the SHO order contained a clear mistake of law. The commission specifies that the error was relying on a report in which Dr. Gallanosa clearly stated that he could not conclude that the stated loss was due to the allowed condition, and we agree. The commission's failure to address Dr. Kopey or the remaining doctors' reports does not remove the jurisdiction of the commission because none of the other doctors concluded that one or more allowed conditions proximately caused the loss of use of the right arm as required for R.C. 4123.57(B) scheduled loss compensation. Accordingly, the other doctors' opinions would not support the SHO's decision to grant loss of use of the right arm caused by allowed conditions in his claim.  Thus, the magistrate did not improperly weigh the evidence; instead, he explained why the SHO's reliance on that evidence supported the commission's finding a clear mistake of law. Therefore, we overrule relator's third and fourth objections.

## III.  Conclusion

{¶ 13} After an examination of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we overrule relator's objections and adopt the magistrate's findings of fact and conclusions of law. Accordingly, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

**TYACK and BROWN, JJ., concur.**

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel. Robert Eaken,          :

      Relator,                                    :                    No.  13AP-797

v.                                                        :                    (REGULAR CALENDAR)

Natural Resources and                                :
Industrial Commission of Ohio,

                                                     :

        Respondents.

                                                     :

_____

MAGISTRATE'S DECISION

Rendered on August 26, 2014

_____

*The Mikulka Law Firm, LLC,* **and** *Angela J. Mikulka,* **for relator.**

*Michael DeWine,* **Attorney General, and** *Kevin J. Reis,* **for respondent Industrial Commission of Ohio.**

*Isaac, Wiles, Burkholder & Teetor, LLC,* **and** *J. Miles Gibson,* **for respondent Department of Natural Resources.**

_____

IN MANDAMUS

{¶ 14} In this original action, relator, Robert Eaken, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its October 18, 2012 order that exercised continuing jurisdiction over the June 28, 2012 order of its staff hearing officer ("SHO") that granted to relator R.C. 4123.57(B) scheduled loss compensation for the loss of use of his right arm, and to enter an order reinstating the June 28, 2012 SHO's order.

<u>Findings of Fact</u>:

{¶ 15} 1. On February 5, 2008, relator sustained an industrial injury while employed as a mechanic for respondent Ohio Department of Natural Resources ("employer"). The injury occurred when relator tried to catch a falling battery.

{¶ 16} 2. The industrial claim (No. 08-809835) is allowed for:

Cervical sprain/strain; thoracic sprain/strain; right shoulder sprain/strain; herniated disc C5-6; cervical spinal stenosis C5-6; tear right supraspinatus.

{¶ 17} 3. On February 14, 2008, relator was initially examined by chiropractor Jeremiah Ferrara, D.C.  In his three-page narrative report dated February 14, 2008, Dr. Ferrara wrote:

> Due to the loss of mobility of the right forearm, especially the bicep and brachioradialis muscles, it is my recommendation that Mr. Eaken consults with an orthopedist or neurologist for a possible EMG/NCV exam of the upper extremities. I also recommend X-Rays of the cervical and thoracic spine and the right shoulder.

{¶ 18} 4.  On October 23, 2008, Hyo H. Kim, M.D., wrote:

> **CASE HISTORY**
> 57 y/o male with severe pain in the right shoulder down to the arm with weakness.
> He [is] unable to raise his arm. He is unable to push or pull with the right arm.
> Past medical history is significant for hypertension and an injury at work in February 2008 when he jerked his right arm and neck when he accidentally touched a battery.
> MRI scan revealed a small tear of the rotator cuff.
> Cervical MRI revealed some bulging discs.
> Medications include Lisinopril.
>
> **DIAGNOSTIC IMPRESSION**
> Right Cervical radiculopathy affecting C-5/6 root with severe axonal damage.
>
> **RECOMMENDATIONS**
> C-spine studies including x-rays and MRI scan.

{¶ 19} 5. On September 10, 2008, upon referral from Dr. Ferrara, relator was examined by Thomas A. Joseph, M.D.  In his two-page narrative report, Dr. Joseph wrote:

> IMPRESSION:      [One] C5-6 disc herniation.
>                          [Two]  Right  upper  extremity  C5 radiculopathy.
>
> RECOMMENDATION: This patient has a clinical picture of cervical radiculopathy. I have recommended an EMG study to document the site of compression as well as prognosis for recovery. He is a non diabetic, hardworking middle-aged male who has continued to work in a light duty capacity since 3 weeks from the time of injury. I would recommend highly that this EMG study be done promptly to facilitate his care as he has already lost motor function in the right arm. In

addition he will need a f/u appointment with a spine specialist for further [evaluation] and treatment. I would recommend referral to either Dr. Paul Pagano or Dr. Douglas Musser. The patient may continue working in a light duty capacity as symptoms permit. There is nothing on his exam or radiographic studies to suggest a concomitant shoulder problem.

{¶ 20} 6. On January 14, 2009, upon referral from Dr. Ferrara, relator underwent a neurological examination performed by John R. Becker, Jr., M.D. In his two-page narrative report, Dr. Becker wrote:

**ASSESSMENT:** Suspect right rotator cuff tear responsible for limitation in right upper extremity flexion and abduction. However, there has been EMG evidence of right C5-C6 radiculopathy with axonal loss and MRI showing broad-based bilateral disc disease at C6 * * *.

**PLAN:** Had lengthy discussion with Bob and his wife concerning options. He does not want neck surgery at this time which is reasonable and will probably seek out a 2nd opinion regarding the rotator cuff issue as discussed above.

{¶ 21} 7. On March 20, 2009, relator was examined by orthopedic surgeon Jeffrey S. Noble, M.D., who is employed by Crystal Clinic Inc. Dr. Noble wrote:

ON PHYSICAL EXAMINATION: He can only FE his arm maybe 40 degrees, his deltoid [is] not contracting and it's markedly atrophied over all three heads. His ER strength has a drop sign and marked loss of strength there. He is weak in the biceps. He had a nerve conduction, EMG three months ago by Dr. Kim and he has seen a couple of neurologists. He has no crepitation. He has passive motion so there are no signs of frozen shoulder, but he can't actively raise it and he's markedly weak in a C5 dermatomal pattern.

MRI shows a large disk at 5-6 on that side.

MRI shoulder doesn't show a significant rotator cuff tear, but he has some tendinopathy there.

TREATMENT/PLAN/DISCUSSION: I think this is cervical spine related. However, I would and I talked with Dr. Ehrler about this: I would repeat his nerve conduction, EMG to include the paraspinals and have Dr. Ehrler see him back for surgery if that is what he would like to do.

{¶ 22} 8. On May 1, 2009, relator was examined by orthopedic surgeon Douglas M. Ehrler, M.D.  Dr. Ehrler wrote:

> He comes in [to]day he had a negative shoulder work up and MRI by Dr. Noble, he still says his arm is extremely weak for deltoid as well as bending his elbow, but distally he has good strength.
>
> * * *
>
> From my standpoint he says he wants to have this fixed, the formal recommendation is to get it fixed, this is a very bad prognosis, I would assume he's not getting any of this back, anything he got back would be a bonus but you have to do something to give that nerve root the best chance of getting better, this will be a long recovery road to build that back up with it being this weak for this long.
>
> Surgery is an anterior cervical discectomy fusion allograft bone and plate at C5-6. We discussed the risks and benefits of this surgical procedure in detail.

{¶ 23} 9.  On May 21, 2009, Dr. Ehrler performed the surgical procedure described in his May 1, 2009 report.  His operative report is contained in the stipulated record.

{¶ 24} 10.  On October 31, 2011, Dr. Ferrara issued a three-page narrative report, stating:

> Mr. Robert Eaken presents today for progress-evaluation specifically for the upper extremities in relation to the industrial injury on 2/5/2008 while employed by the Department of Natural Resources, West Branch Park.
>
> * * *
>
> Mr. Eaken's primary complaint since recovering from neck surgery in 2009 is now overall R hand/arm pain/ weakness, intermittent [right] forearm/hand edema and swelling, and functional loss of movement of his [right] arm; specifically of the [right] bicep, deltoid, and rotator cuff muscles. Muscle weakness is also noted in Bob's L arm, but significantly more of his injured [right] arm/hand.
>
> * * *
>
> **ALLOWED CONDITIONS:**
> [One] 722.0 cervical IVD syndrome at C5-C6
> [Two] 723.0 cervical spinal stenosis at C5-C6

[Three] 840.9 [right] rotator cuff syndrome/impingement

**ASSESSMENT:**
It is my medical opinion that since the [date of injury] and subsequent neck surgery and rehabilitation that Mr. Eaken's [right] arm/hand is permanently partially impaired (PPI) as the direct result of the industrial accident on 2/5/2008. It is also my opinion that Bob has reached maximal medical improvement (MMI) in regards to his neck and arm. **Furthermore, it is my opinion that Mr. Eaken be re-evaluated by an independent medical examiner (IME) to determine what percentage of PPI Bob has sustained. It is also my opinion that Mr. Eaken be re-examined by his neurosurgeon and/or orthopedic surgeon to determine is [sic] further surgeries to his neck and/or rotator cuff would be warranted.**

* * *

Since surgery and initial rehabilitation I have asked Mr. Eaken to visit my office every 4-6 months to personally evaluate his progressions. However, I do allow my patients with ongoing need for therapy such as electric stimulation (97014) used for daily/weekly aches and pains to come to my office to utilize my therapy equipment. Because Bob's usage of my therapy equipment does not require my direct time or attention, I have allowed Bob to visit my office from week to week to help with his daily symptoms.

* * *

Normally with [sic] patient under Bob's circumstances would be unable to work at all over the last few years since his injury, surgery, and post-surgery rehabilitation. Mr. Eaken is certainly not most patients! If a missed work history were to be obtained, one would see that besides a few weeks during surgery and recovery, Bob has not missed much work. Due to his left-handedness, Bob has been able to continue his job responsibilities as mechanic for West Branch State Park in lieu of his increasingly impaired R arm/hand.

[One] Bob's loss of the use [of] his [right] arm began approximately 10-14 days after the [date of injury] on 2/5/08. Initially Bob could still use his [right] bicep after the injury, but shortly after (~10 days) Bob's arm started to rapidly lose function.

[Two] As mentioned earlier, Bob's expectancy to return to work has never been an issue as he continues to perform his work duties by altering his techniques.

[Three] N/A

[Four] As mentioned earlier, Bob continues to find ways to complete his job duties. But, future restrictions may change as the PPI of his [right] arm/hand continues to worsen.

(Emphasis sic.)

{¶ 25} 11. On November 11, 2011, citing the October 31, 2011 report of Dr. Ferrara, relator moved for R.C. 4123.57(B) scheduled loss compensation for the alleged loss of use of his right arm.

{¶ 26} 12. On January 9, 2012, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Arvin J.K. Gallanosa, M.D. In his five-page narrative report, Dr. Gallanosa states:

In my medical opinion and based on my examination and review of the medical records, Mr. Eaken does have total permanent loss of use of the right upper limb. However, it is unclear whether this is due to his allowed conditions of herniated disc and cervical stenosis. According to the office visit note from Dr. Ehrler, his surgeon, dated 09/04/09, he had normal strength in the right upper limb except for some weakness around the shoulder. On examination by Dr. Ferrara dated 10/31/11, he had 0-1/5 strength in the right upper limb throughout. On my examination, he had loss of strength with right shoulder at 1-2/5 with shoulder flexion, extension, and abduction and 0/5 with other shoulder movements. He had 0/5 strength with elbow extension and flexion on my examination as well. Clearly something had occurred between his last examination with Dr. Ehrler in 2009 and the current examinations from Dr. Ferrara in 2011 and my current examination. He is seen to have poor use of the right upper limb with very limited movement of the right shoulder and better movement distally on examination today. However, it is not clear to me that this is a direct result of his allowed conditions in the claim. Consideration should be given to updated cervical MRI and electro-diagnostic studies to determine whether the etiology of his loss of right upper limb use is due to his currently allowed conditions or to another, as yet undiagnosed, issue.

In summary, based on the available medical records, I cannot conclude that the loss of use is due to the allowed conditions and therefore total, permanent loss of use is not granted at this time. If additional studies are performed to support the total, permanent loss of use, please forward to me for my review and consideration.

* * *

Mr. Eaken's limited right shoulder range of motion and loss of strength at the right shoulder area as well as his limited elbow flexion and extension and loss of strength in elbow flexion and extension are the main issues, which prevent his right arm from being used in the way it would be expected. As noted above, I cannot conclude that the stated loss is due to the allowed conditions.

{¶ 27} 13. Following a March 8, 2012 hearing, a district hearing officer ("DHO") issued an order denying relator's November 11, 2011 motion.

{¶ 28} 14. Relator administratively appealed the DHO's order of March 8, 2012.

{¶ 29} 15. On March 22, 2012, at the bureau's request, relator was examined by Stephanie Kopey, D.O. In her six-page narrative report, Dr. Kopey states:

**Impression:**
This is a 60 y.o. year old [sic] man with allowed diagnoses of: 847.0 Sprain of Neck, 847.1 Sprain of Thoracic Region, 840.9 Sprain Shoulder/Arm NOS (Right Shoulder), 722.0 C5-C6 Herniated Disc, 723.0 Cervical Spinal Stenosis at C5-C6.

Now, I will answer the requested questions:

Does the medical documentation in the file indicate whether the injured worker is/was temporarily totally disabled from 1/27/12 to [estimated] date of 5/18/12? If so, is the requested period of disability related to the 2/5/08 work related accident or another non work-related event (this could include natural deterioration or unrelated medical condition(s))? Please explain the basis of your opinion.

Yes, the medical documentation supports that the injured worker is temporarily totally disabled from 1/27/12 to 5/18/12. The requested period of disability is related to the 2/5/08 work related accident and the allowed condition of C5-6 herniated disc. The primary diagnosis limiting his

ability to work is the weakness in C5 and C6 muscles. There were concordant finding[s] on his MRI of C5-6 disc bulge prior to surgery and an EMG report by Dr. Kim confirms the diagnosis of C5 and/or C6 radiculopathy. Inconsistencies in the strength testing post-operatively raise the question on the file review of whether he had recovered and then had some new injury causing new weakness. The discharge summary after his ACDF does not document a significant recovery in his strength postoperatively. There have been several examinations which note non-dermatomal sensory loss and one recent note by Dr. [Ehrler] notes his symptoms to be out of proportion to his MRI findings so there may be some symptom magnification going on. He does however have imaging, EMG and examination findings consistent with a chronic right cervical radiculopathy causing his right arm weakness which Dr. [Ehrler] stated the prognosis for recovery after surgery was poor due to the duration and extent of the axonal damage seen on the EMG. He has a remote (age 17) right forearm fracture with no sequelae. He has co-existent right acromioclavicular degenerative joint disease, partial rotator cuff tear and findings consistent with impingement syndrome on his shoulder MRI but this cannot explain the extent of weakness, atrophy and reflex changes seen in this patient and his clinical examination is not consistent with this being the primary problem. No other non-allowed condition or disease explains his current symptoms.

{¶ 30} 16. On April 18, 2012, at the employer's request, relator was examined by Matthew D. McDaniel, M.D. In his five-page narrative report, Dr. McDaniel opined:

In my opinion, the medical evidence does not support that Mr. Eaken sustained a total loss of use of the right arm secondary to the allowed conditions. The claim allowances would not anatomically cause a total loss of use of an entire extremity. Sprain/strains heal and do not cause global arm weakness and numbness. The herniated disc/spinal stenosis at C5-6 is localized to one cervical level. The initial EMG showed only C5-6 radiculopathy. These nerves would affect the deltoid, biceps and sometimes wrist extensors, not all of the muscle groups in the entire arm.

Clinically, Dr. [Ehrler] repeatedly documented normal strength throughout the arm after surgery — specific reference is made to the bilateral 5/5 strength at C5-6, C6-7, C7-8, and C8-T1 in the 06/05/09, 06/29/09, and 09/04/09 notes. Upon representation to Dr. [Ehrler] on 02/27/12, the clinical examination is much different than in 2009,

indicating some other pathologic process has occurred in the interim.

We then move to the second electrodiagnostic study of 04/12/11. This study is also much different from the first, and demonstrates new and distinct pathology now involving the non-allowed right C7 nerve root and non-allowed mixed peripheral neuropathy.

In my opinion, clearly something else is happening here outside of the claim involving a different cervical nerve root and the peripheral nerves of the right arm that cannot be reasonably attributed to the industrial injury and allowed conditions.

{¶ 31} 17. Following a June 28, 2012 hearing, an SHO mailed an order on July 6, 2012 that vacated the DHO's order of March 8, 2012 and granted relator's November 11, 2011 motion for R.C. 4123.57(B) compensation for an alleged loss of use of the right arm. The SHO's order explains:

The Staff Hearing Officer finds that the Injured Worker was initially examined, on behalf of the Bureau of Workers' Compensation, by Arvin J.K. Gallanosa, M.D. to determine whether the Injured Worker has sustained a total functional loss of use of the right arm due [to] allowed conditions in this claim, as alleged.

In his report dated 01/09/2012, Dr. Gallanosa does conclude that the Injured Worker does suffer the total functional loss of use of the right arm, however, he further finds that he is unable to causally relate this loss of use to allowed conditions in this claim.
Dr. Gallanosa indicates certain findings justifying his conclusion that the Injured Worker does have a total loss of use of the right arm however, he goes on to state that:
It is unclear whether this is due to his allowed conditions of herniated disc and cervical stenosis. According to the office visit note from Dr. Ehrler, his surgeon, dated 09/04/2009, he had normal strength in the right upper limb except for some weakness around the shoulder. On examination by Dr. Ferrara dated 10/31/2011, he had 0-1/5 strength in the right upper limb throughout. On my examination he had lost the strength with right shoulder at 1-2/5 with shoulder flexion, extension, and abduction and 0/5 with other shoulder movements. He had 0/5 strength with elbow extension and flexion on my examination as well. Clearly something had occurred between his last examination with Dr. Ehrler in

2009 and the current examinations from Dr. Ferrara in 2011 and my current examination.

In his summary, Dr. Gallanosa goes on to say, "I cannot conclude that the loss of use is due to the allowed conditions and therefore total, permanent loss of use is not granted at this time.["]

Recently, the Injured Worker was examined on the issue of temporary total disability on behalf of the Bureau of Workers' Compensation, by Stephanie Kopey, M.D. In her evaluation, Dr. Kopey was specifically requested to address the issue of whether or not the Injured Worker is temporarily and totally disabled due to the 02/05/2008 work-related accident or another non-work-related event, including natural deterioration or unrelated medical condition or conditions. Dr. Kopey concluded that the Injured Worker's present disability is related to the 02/05/2008 work-related accident and the allowed condition of C5-6 herniated disc. She goes on to state:

[T]he primary diagnosis limiting his ability to work is the weakness in the C5 and C8 [sic] muscles. There were concordant finding[s] on his MRI of C5-6 disc bulge prior to surgery and an EMG report by Dr. Kim confirms the diagnosis of C5 and/or C6 radiculopathy. Inconsistencies in the strength testing post-operative raise the question on the file review of whether he had recovered and then had some new injury causing the new weakness. The discharge summary after his ACDF does not document a significant recovery in his strength post-operatively. There have been several examinations which note non-dermatomal sensory loss and one recent note by Dr. Ehrler notes his symptoms to be out of proportion to his MRI findings so there may be some symptom magnification going on. He does however have imaging, EMG and examination findings consistent with a chronic right cervical radiculopathy causing his right arm weakness which Dr. Ehrler stated the prognosis for recovery after surgery was poor due to the duration and extent of the axonal damage seen on the EMG.

Dr. Kopey also goes on to state that:

[T]he Injured Worker has a remote (Age 17) right forearm fracture with no sequelae. He has co-existent right acromioclavicular degenerative joint disease, partial rotator cuff tear and findings consistent with impingement syndrome on his shoulder MRI but this cannot explain the

extent of weakness. Atrophy and reflex changes seen in this patient and his clinical examinations not consistent with this being the primary problem. No other non-allowed condition or disease explains his current symptoms.

Given the Bureau of Workers' Compensation opinion from the examining physician Dr. Gallanosa, who opines that the Injured Worker does have the total loss of use of the right arm, (although indicating he could not opine that it was clearly related to the allowed conditions), and given the said opinion of Dr. Kopey who specifically ruled out all other non-allowed conditions as being the primary problem for the Injured Worker's right upper extremity, and coupled with the medical evidence offered in support of the Injured Worker's request, identified below, the Staff Hearing Officer concludes that the Injured Worker has satisfied his burden of proof in this particular matter.

The Staff Hearing Officer concludes that the Injured Worker has demonstrated by a preponderance of the evidence that he has sustained the total loss of functional use of the right arm due to allowed conditions in this claim.

It is ordered therefore, that the Injured Worker is entitled to receive compensation pursuant to R.C. 4123.57(B) for the total loss of the right arm, commencing 10/31/2011, the date of the Jeremiah Ferrara, D.C. opinion that the Injured Worker has a total loss of functional use of the right arm. The Staff Hearing Officer finds that this is the first persuasive documented opinion actually stating that the Injured Worker had suffered the total loss of use of the right arm.

The Injured Worker's request for payment of this award to commence on 02/14/2008, pursuant to the 02/14/2008 office visit record of Dr. Ferrara, is not well taken and is hereby specifically rejected as Dr. Ferrara does not indicate in that report that the Injured Worker has sustained the total loss of use of the right arm. To the contrary, the Injured Worker was noted to be working with restricted mobility of the right shoulder, at that time, and that these restrictions could possibly increase with time.

In rendering this decision, in addition to relying upon the said opinions of Dr. Gallanosa and Dr. Kopey as discussed above, the Staff Hearing Officer also relies upon the 10/31/2011 medical narrative from Jeremiah Ferrara, D.C.; the 09/10/2008 medical narrative from Thomas A. Joseph, M.D.; the 10/23/2008 opinion from Hyo H. Kim, M.D.; the

neurological consultation report dated 01/14/2009 from John R. Becker, M.D.; and the 03/20/2009 medical narrative from Jeffrey S. Noble, M.D.

This evidence was found persuasive in this matter. Based upon all the evidence cited above, the Staff Hearing Officer concludes that the Injured Worker has demonstrated by a preponderance of the evidence that the Injured Worker has lost the functional use of his right arm, for all intent and purposes, thus satisfying the standard set forth in State ex rel. Alcoa Bldg. Products v. Indus. Comm. (2004), 102 Ohio St.3d.

{¶ 32} 18. The employer administratively appealed the SHO's order of June 28, 2012.

{¶ 33} 19. On July 26, 2012, another SHO mailed an order refusing the employer's appeal.

{¶ 34} 20. On August 9, 2012, the employer moved for reconsideration.  The employer alleged that the SHO's order of June 28, 2012 contains clear mistakes of fact and law.  The employer alleged that the SHO had relied upon the reports of Drs. Gallanosa and Kopey and that in neither of those reports does the doctor opine that relator has loss of use of the right arm as a result of the allowed conditions of the industrial claim.

{¶ 35} 21. Following an October 18, 2012 hearing, the three-member commission mailed an order on December 15, 2012 that exercises continuing jurisdiction over the SHO's order of June 28, 2012, and denies relator's November 11, 2011 motion for R.C. 4123.57(B) scheduled loss compensation.

The commission's order explains:

[I]t is the finding of the Industrial Commission that the Employer has met its burden of proving that the Staff Hearing Officer order, issued 07/06/2012, contains a clear mistake of law of such character that remedial action would clearly follow.

Specifically, despite awarding a total loss of use of the right arm, the Staff Hearing Officer erroneously relied on the 01/09/2012 medical report of Arvin [Gallanosa], M.D., which does not causally relate the total loss of use to the Injured Worker's allowed condition in this claim. To the contrary, in his 01/09/2012 report Dr. Gallanosa concluded,

"I cannot conclude that the stated loss is due to the allowed conditions." Therefore, the Industrial Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm., 81 Ohio St.3d 454, 692 N.E. 2d 188 (1998), State ex rel. Foster v. Indus. Comm., 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and State ex rel. Gobich v. Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, in order to correct this error.

The Employer's request for reconsideration, filed 08/09/2012, is granted. * * * It is further ordered that the Staff Hearing Officer order, issued 07/06/2012, is vacated.

It is the order of the Commission that the Injured Worker's C-86 Motion, requesting a total loss of use award for the right upper extremity, filed 11/11/2011, is denied.

It is the order of the Commission that the application for the functional loss of use of the right arm, thus entitling the Injured Worker to a total loss of use award in accordance with R.C. 4123.57(B), is denied. This decision is based on the report of Arvin Gallanosa, M.D., dated 01/09/2012, and the report of Matthew McDaniel, M.D., dated 04/18/2012 [sic].

Dr. Gallanosa found the Injured Worker does have a total permanent loss of use of the right upper limb. However, Dr. Gallanosa further found it is unclear whether this is due to his allowed conditions of herniated disc and cervical stenosis. The Injured Worker was found to have poor use of his right upper limb but it is unclear that this is a direct result of the allowed conditions in the claim. Based on the available medical records, Dr. Gallanosa states he cannot conclude that the loss of use is due to the allowed conditions and, therefore, a permanent total loss of use cannot be granted.

Dr. McDaniel performed an examination of the Injured Worker on 04/18/2012. Dr. McDaniel opined the medical evidence does not support the Injured Worker sustained a total loss of use of his right arm secondary to the allowed conditions. Dr. McDaniel concluded the claim allowances would not anatomically cause a total loss of use of an entire extremity, and clearly something else was happening outside of the claim involving a different cervical root and peripheral nerves of the right arm that could not be reasonably att-ributed to the industrial injury and the allowed conditions.

Neither Dr. Gallanosa nor Dr. McDaniel attribute the Injured Worker's loss of use of the right arm to the conditions allowed in this claim. Consequently, as the persuasive medical evidence does not find a causal relationship between the loss of use and the conditions allowed in this claim, the motion for a loss of use award is denied.

{¶ 36} 22. On September 13, 2013, relator, Robert Eaken, filed this mandamus action.

Conclusions of Law:

{¶ 37} The issue is whether the commission abused its discretion in finding a clear mistake of law in the SHO's order of June 28, 2012 as a basis for the exercise of continuing jurisdiction.

{¶ 38} Finding that the commission did not abuse its discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 39} Continuing jurisdiction is not unlimited. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; and (5) error by an inferior tribunal. *State ex rel. Gobich v. Indus. Comm.,* 103 Ohio St.3d 585, 2004–Ohio–5990; *State ex rel. Royal v. Indus. Comm.,* 95 Ohio St.3d 97 (2002); *State ex rel. Foster v. Indus. Comm.,* 85 Ohio St.3d 320 (1999); and *State ex rel. Nicholls v. Indus. Comm.,* 81 Ohio St.3d 454 (1998).

{¶ 40} In *Gobich,* at ¶ 15, the court states:

The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. This means that the prerequisite must be both identified and explained. It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked.

(Citations omitted.)

{¶ 41} In the seminal case of *State ex rel. Waddle v. Indus. Comm.,* 67 Ohio St.3d 452 (1993), the court held that non-allowed medical conditions cannot be used to advance or defeat a claim for compensation. Later, in *State ex rel. Bradley v. Indus. Comm.,* 77 Ohio St.3d 239, 242 (1997), citing its decision in *Waddle,* the court stated that the mere presence of a non-allowed condition in a claim does not itself destroy the compensability of the claim, but the claimant must meet his burden of showing that an allowed condition independently caused the disability.

{¶ 42} In *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.,* 102 Ohio St.3d 341, 2004-Ohio-3166, the Supreme Court of Ohio recognized that a claimant could recover for the loss of an arm even where residual use of the arm remained. Citing a Pennsylvania case with approval, the court stated that " 'it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes.' " *Alcoa, at* ¶ 13, quoting *Curran v. Walter E. Knipe & Sons, Inc.,* 185 Pa.Super. 540, 547, 138 A.2d 251 (1958). Similarly, in *State ex rel. Kroger Co. v. Johnson,* 128 Ohio St.3d 243, 2011-Ohio-530, ¶ 15, the court stated that the retention of "residual function" in a claimant's hand did not automatically defeat his claim for loss of use. Rather, "the pivotal question is how much function remains." *Id.*

{¶ 43} Analysis begins with some observations regarding the SHO's order of June 28, 2012 that granted R.C. 4123.57(B) scheduled loss compensation for the alleged loss of use of relator's right arm.

{¶ 44} While the SHO's order of June 28, 2012 states reliance upon the medical reports of Drs. Ferrara, Joseph, Kim, Becker, and Noble, the reliance is largely unexplained with the possible exception of the October 31, 2011 report of Dr. Ferrara, which the SHO used to commence compensation effective the date of the report.

{¶ 45} It is clear that primary reliance was upon the reports of Drs. Gallanosa and Kopey. Those two reports were quoted at length and discussed at some length.

{¶ 46} While Dr. Gallanosa determined from his examination that relator "does suffer the total functional loss of use of the right arm," he also found that "he is unable to causally relate this loss of use to allowed conditions in this claim." Contrary to what seems to be suggested by relator here, Dr. Gallanosa's report is not equivocal. It does not lack probative value simply because Dr. Gallanosa was unable to determine whether the

allowed conditions of the claim are the proximate cause of relator's alleged functional loss of use of his right arm.

{¶ 47} Equivocal medical opinions are not evidence. *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649 (1994). Equivocation occurs when a doctor repudiates an earlier report, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. *Id.*

{¶ 48} Clearly, it is not inconsistent for a doctor to find from his clinical examination that the claimant suffers a loss of use, yet the doctor remains uncertain that the industrial injury is the cause of the loss of use because more diagnostic testing needs to be done. This element of uncertainty does not render the report non-probative or equivocal as a matter of law. However, the report cannot be relied upon as the sole evidence supporting a finding that the observed loss of use is proximately caused by one or more allowed conditions of the claim. That is, Dr. Gallanosa's report cannot stand alone as the some evidence supporting the award of compensation.

{¶ 49} Dr. Kopey's report provides no evidence supporting a finding that the alleged loss of use of the right arm is proximately caused by the industrial injury. Dr. Kopey examined relator to determine whether relator is temporarily totally disabled. The standard for determining temporary total disability is whether the claimant is unable to return to his former position of employment due to the industrial injury. *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 50} Dr. Kopey was not asked to determine whether one or more allowed conditions of the claim caused the alleged loss of use of the right arm nor did Dr. Kopey render such a determination.

{¶ 51} Dr. Kopey did determine that the requested period of temporary total disability is related to the February 5, 2008 injury and specifically "the allowed condition of C5-6 herniated disc." That is, Dr. Kopey opined "[t]he primary diagnosis limiting his ability to work is the weakness in C5 and C6 muscles."

{¶ 52} Clearly, Dr. Kopey's opinion that the industrial injury prevents a return to the former position of employment does not translate into an opinion that the alleged loss of use is proximately caused by the industrial injury.

{¶ 53} In its October 18, 2012 order exercising continuing jurisdiction, the commission correctly points out that the SHO's order of June 28, 2012 states reliance

upon the report of Dr. Gallanosa, which does not causally relate the alleged loss of use to the allowed conditions in the claim.

{¶ 54} However, the commission's order of October 18, 2012 fails to address the report of Dr. Kopey or to even mention it.  In that regard, the commission's analysis of the alleged mistake of law is incomplete.  That is, the commission fails to explain that the SHO's reliance upon the report of Dr. Gallanosa is a mistake of law because neither the report of Dr. Gallanosa nor the report of Dr. Kopey causally relate the alleged loss of use to one or more allowed conditions of the claim.

{¶ 55} In the magistrate's view, the commission's failure to fully explain why the SHO's reliance upon the report of Dr. Gallanosa is a mistake of law is not fatal to the commission's order exercising continuing jurisdiction.

{¶ 56} Here, relator argues that the jurisdictional basis, i.e., clear mistake of law, for the exercise of continuing jurisdiction was insufficiently explained by the commission because "no law is ever identified nor is the specific misapplication of the said law set forth."  (Relator's brief, 13.)  Relator further asserts "[w]hile continuing jurisdiction was exercised on the basis of a clear mistake of law, no statute, Administrative Code section or other law of any type was ever identified as being mistakenly understood or applied by [the] SHO.  (Relator's brief, 16.)

{¶ 57} Relator's argument lacks merit. It is clear from a reading of the commission's October 18, 2012 order that the commission applied well-settled case law in the area of Ohio Workers' Compensation when it determined that the SHO's order of June 28, 2012 improperly relies upon the report of Dr. Gallanosa to support a finding that one or more allowed conditions of the claim proximately caused an alleged loss of use of the right arm.  That is, the commission's order of October 18, 2012 fails to cite to *Waddle* and/or *Bradley* or any other case law pronouncing the proposition of law being applied to the SHO's order of June 28, 2012.  That failure is not fatal to the commission's exercise of continuing jurisdiction.  *State ex rel. Washington-Bass v. Setla LLC*, 10th Dist. No. 09AP-343, 2010-Ohio-5151, ¶ 5.

{¶ 58} Relator further argues that the stated reliance of the SHO's order of June 28, 2012 on the reports of Drs. Ferrara, Joseph, Kim, Becker, and Noble saves the order from the exercise of continuing jurisdiction.  Relator is incorrect.

{¶ 59} The October 31, 2011 report of Dr. Ferrara upon which the SHO relied for the start date of compensation fails to opine that one or more allowed conditions of the claim proximately cause an alleged loss of use of relator's right arm. It cannot, therefore be used to establish a start date for compensation or to support the award of compensation. In fact, Dr. Ferrara incorrectly lists "rotator cuff syn-drome/impingement" as an allowed condition. He also opines that relator's "[right] arm/hand is permanently partially impaired (PPI) as the direct result of the industrial accident on 2/5/2008." That statement does not even suggest loss of use of the right arm.

{¶ 60} While the September 10, 2008 report of Dr. Joseph states that relator "has already lost motor function in the right arm," the report fails to indicate any awareness of the *Alcoa* standard for determining loss of use. In fact, Dr. Joseph does not opine that relator has a loss of use of his right arm under the *Alcoa* standard.

{¶ 61} The October 23, 2008 report of Dr. Kim states that relator "is unable to raise his arm. He is unable to push or pull with the right arm." However, Dr. Kim does not opine that relator has a loss of use of his right arm under the *Alcoa* standard.

{¶ 62} The January 14, 2009 report of Dr. Becker is focused upon a suspected right rotator cuff tear that allegedly limits right upper extremity flexion and abduction. The industrial claim is not allowed for a right rotator cuff tear. Moreover, Dr. Becker does not opine that one or more allowed conditions of the claim proximately cause an alleged loss of use of the right arm.

{¶ 63} The March 20, 2009 report of Dr. Noble finds upon examination that the deltoid is not contracting and is markedly atrophied over all three heads. Dr. Noble also finds that relator cannot "actively raise" his right shoulder, and he is "markedly weak in a C5 dermatomal pattern." Dr. Noble does not opine that one or more allowed conditions of the claim proximately cause an alleged loss of use of the right arm.

{¶ 64} In short, the reports of Drs. Ferrara, Joseph, Kim, Becker, and Noble, upon which the SHO states additional reliance, cannot save the order from the exercise of the commission's continuing jurisdiction.

{¶ 65} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE

KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).